IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| STUART STEUBING,<br>    Plaintiff,<br><br>VS.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br>    Defendant. | §<br>§<br>§<br>§      CIVIL NO. 4:21-CV-377-O<br>§<br>§<br>§<br>§ |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate are as follows:

## FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

Plaintiff Stuart Steubing ("Steubing") filed this action pursuant to Section 205(g) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security terminating her disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). On October 4, 2018, Steubing proactively applied for DIB and alleged that his disability began on September 21, 2017. (Transcript ("Tr.") at 11, 144-50.) Steubing was initially denied on May 6, 2019, and on reconsideration on August 16, 2019. (Tr. at 77-81, 89-92.) Steubing then requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 93-4.) On June 25, 2020, a hearing was held before the ALJ, and on July 16, 2020, the ALJ found that Steubing was not disabled within the meaning of the SSA. (Tr. at 11, 22.) Steubing filed a written request for review of the ALJ's decision to the Appeals Council. (Tr. at 143.) The Appeals

1

Council granted Steubing's request for review and, on January 6, 2021, issued an unfavorable decision. (Tr. at 1-5.) Steubing filed this civil action under 42 U.S.C. § 405(g), requesting judicial review of the ALJ's decision.

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and numerous regulatory provisions. *See* 20 C.F.R. Pt. 404. The SSA defines "disability" as a "medically determinable physical or mental impairment" lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d)(1), 1382c(a)(3)(A).

To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520(a)(4). First, the claimant must not be presently working at any substantial gainful activity. *Id.* §§ 404.1520(a)(4)(i), (b). "Substantial gainful activity" is defined as work activity involving the use of significant physical or mental abilities for pay or profit. *See id.* § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. *Id.* §§ 404.1520(a)(4)(ii), (c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"). 20 C.F.R. Pt. 404 Subpt. P, App. 1; 20 C.F.R. §§ 404.1520(a)(4)(iii), (d).[1] Fourth, if disability cannot be found based on the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f). Fifth, the impairment must prevent

---

[1] Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity ("RFC") to determine the most the claimant is able to do notwithstanding her physical and mental limitations. 20 C.F.R. §§ 404.1520(a)(4), (e). The claimant's RFC is used at both the fourth and fifth steps of the five-step analysis. *Id.* § 404.1520(a)(4). At step four, the claimant's RFC is used to determine if the claimant can still do her past relevant work. *Id.* § 404.1520(a)(4)(iv). At step five, the claimant's RFC is used to determine whether the claimant can adjust to other types of work. *Id.* § 404.1520(a)(4)(v).

the claimant from doing any work, considering the claimant's RFC, age, education, and past work experiences. *Id.* §§ 404.1520(a)(4)(v), (g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). At steps one through four, the burden of proof rests upon the claimant to show she is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairments. *Id.* If the Commissioner meets his burden, it is up to the claimant to then show that she cannot perform the alternate work. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards, and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if *no* credible evidentiary choices or medical findings support the decision. *Id.* (emphasis added). An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollis v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. Jun. 2, 2009). This Court may neither reweigh the evidence in the record, nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

## III. ISSUES

In his brief, Steubing presents the following issues: (1) whether the ALJ properly weighed and adopted the medical opinion of Gregory Dayton, Ph. D ("Dr. Dayton"); (2) whether the ALJ erred in determining Steubing's residual functional capacity ("RFC") by rejecting the medical opinion of State agency medical consultant ("SAMC") Paul Cherry, Ph. D. (" SAMC Cherry"); and (3) whether the ALJ failed to fully develop the record by not obtaining a medical source statement.[2] (Plaintiff's Brief ("Pl.'s Br.") at 1.)

## IV. ALJ DECISION

In his July 16, 2020, decision, the ALJ performed the five-step sequential evaluation process for determining whether a person is disabled. (Tr. 11-22.) The ALJ first noted that Steubing met the disability insured status requirements under Title II of the SSA through December 31, 2022. (Tr. at 13.) The ALJ then stated that Steubing had not engaged in substantial gainful activity since September 21, 2017, the alleged onset date. (Tr. at 13.) The ALJ further noted that Steubing had the following "severe" impairments: "depression, anxiety, and post-traumatic stress disorder (PTSD)." (Tr. at 13.) Next, the ALJ held that none of Steubing's impairments or combination of impairments met or equaled the severity of any impairment in the Listing. (Tr. at 14.) As to Steubing's RFC, the ALJ stated:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except he must avoid extreme heat and very loud noises, such as jackhammers; thus, he must work indoors in a climate-controlled environment. He can understand, remember, and carry out simple and routine instructions and tasks. He can have occasional interaction with the public, coworkers, and supervisors.

---

[2] While Steubing has separately presented his issues regarding medical opinion evidence of Drs. Dayton and Cherry, the Court will address these issues together.

(Tr. at 16 (emphasis omitted).) Next, the ALJ opined that Steubing was unable to perform any of his past relevant work. (Tr. at 20.) Relying on the testimony of a vocational expert ("VE"), the ALJ, however, found that there were jobs that existed in significant numbers in the national economy that Steubing could perform. (Tr. at 21.) Consequently, the ALJ determined that Steubing was not disabled. (Tr. at 22.)

## V. DISCUSSION

### A. Medical Opinion Evidence and RFC Determination

In his brief, Steubing first argues that the ALJ "failed to properly weigh all of the medical opinions in the administrative record," and that, while the ALJ recognized Dr. Dayton's medical opinions," the ALJ erred in failing to "place any weight" on those opinions. (Pl.'s Br. at 5-6.) Steubing claims that the "ALJ's evaluation and rejection of Dr. Dayton's medical opinions were errors of law." (*Id.* at 6.) In support, Steubing relies on 20 CFR § 404.1520c(a)'s "factors of supportability [] and consistency," stating that "the ALJ failed to properly consider the supportability and consistency factors." (*Id.* (emphasis omitted).) Specifically, Steubing claims that the ALJ erred in finding that Dr. Dayton's medical opinions were not persuasive because they relied on Steubing's "subjective statements that were not supported by the treating record or consistent with mental status examinations." (Id. at 7.) Steubing argues that the ALJ's reasoning for his finding was error because "Dr. Dayton's examination, report and opinions were not reviewed by any medical doctor" and because "the ALJ is not a medical doctor." (*Id.*)

Next, Steubing, in his brief, argues that the ALJ erred in partially adopting SAMC Cherry's opinion. In support, Steubing states:

> [T]he ALJ adopted Dr. Cherry's opinion that the Plaintiff was limited to understanding, remembering, and carrying out simple instructions. However, the ALJ rejected Dr. Cherry's opinion that the Plaintiff should have no contact with the public, and instead, limited him to only occasional contact. The ALJ's reasoning was that the Plaintiff's testimony at the hearing did not support the limitation, he

>showed cooperative behavior with treatment providers, and his anger issues were only in the context of his family relationships.

(Pl.'s Br. at 9 (citations omitted).) Steubing argues that the ALJ "either made up his own medical conclusions when determining the found RFC or the found RFC was in error of law," because the ALJ is a "laymen(sic)" rather than a doctor. (Pl.'s Br. at 8-9.)

RFC is what an individual can still do despite their limitations.[3] SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do but the most. *Id.* The RFC is a function-by-function assessment, with both exertional and nonexertional[4] factors to be considered, and it is based upon all of the relevant evidence in the case record. *Id.* at 3–6. The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making the RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2017 WL 5180304,

---

[3] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from step three to step four. *Id.*

[4] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, pulling." SSR 96-8p, 1996 WL 374184, at *5. Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

at *2 (Oct. 25, 2017); SSR 96-8p, 1996 WL 374184, at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* SSR 96-8p, 1996 WL 374184, at *5. The ALJ may draw reasonable inferences from the evidence in making his decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence. *See e.g.*, SSR 86-8, 1986 WL 68636, at *8 (1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (Aug. 1, 1991) (changing the ruling only to the extent the SSR discusses the former procedures used to determine disability in children).

The ALJ is not required to incorporate limitations in the RFC that he did not find the record supported. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record."). In reviewing the ALJ's decision, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd*, 239 F.3d at 704.

The ALJ's treatment of medical opinions is governed by the revised rules in 20 C.F.R. § 404.1520c, which apply to claims that were filed after March 27, 2017, such as the claims in the present case. *See Winston v. Berryhill*, 755 F. App'x 395, 402 n.4 (5th Cir. 2018) (citing 20 C.F.R. 404.1520c(a)); *Governor v. Comm'r of Soc. Sec.*, No. 20-54-BAJ-EWD, 2021 WL 1151580, at *6 (M.D. La. Mar. 2, 2021). Pursuant to 20 C.F.R. § 404.1520c(a), the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [claimant's] medical sources." "When a

medical source provides one or more medical opinions[5] or prior administrative medical findings,[6] [the ALJ] will consider those medical opinions or prior administrative findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of" section 404.1520c(a), as appropriate." 20 C.F.R. § 404.1520c(a) (footnotes added). The ALJ is not required to articulate how he considered each medical opinion or prior administrative medical findings from one medical source individually. 20 C.F.R. § 404.1520c(b)(1).

"The most important factors [the ALJ] consider[s] when [ ]evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." 20 C.F.R. § 404.1520c(a) (footnotes added). "The ALJ must explain the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in his determination, and he may, but is not required to, explain how he considered the (c)(3) [through] (c)(5) factors, *i.e.*, relationship with the claimant, specialization, and 'other factors.'" *Governor*, 2021 WL 1151580, at *7.

---

[5] Medical opinions are statements from a medical source about what the claimant can still do despite her impairment(s) and whether the claimant has one or more impairment-related limitations or restrictions in certain abilities. These may include claimant's ability to: (i) perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (ii) perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (iii) perform other demands of work, such as seeing, hearing, or using other senses; and, (iv) adapt to environmental conditions, such as temperature extremes or fumes. *See* 20 C.F.R. § 404.1513(a)(2).

[6] Prior administrative findings are findings other than the ultimate determination about whether the claimant is disabled, about a medical issue made by the Commissioner's federal and state agency medical and psychological consultants at a prior level of review of the claimant's current claim based on their review of the evidence in the case record. Such findings could be on issues including: (i) the existence and severity of the claimant's impairment(s); (ii) the existence and severity of the claimant's symptoms; (iii) statements about whether the claimant's impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1; (iv) the claimant's RFC; (v) whether the claimant's impairment(s) meets the duration requirement; and (vi) how failure to follow prescribed treatment and drug addiction and alcoholism relate to the claimant's claim. *See* 20 C.F.R. § 404.1413(a)(5).

In this case, the ALJ found, as stated, *supra*, that Steubing had the RFC to perform medium work except he "must avoid extreme heat and very loud noises, such as jackhammers; thus, he must work indoors in a climate-controlled environment." (Tr. at 16.) Further, the ALJ found that Steubing can understand, remember, and carry out simple and routine instructions and tasks and that Steubing can have occasional interaction with the public, coworkers, and supervisors. (Tr. at 16.)

In making his disability determination, the ALJ considered the opinions of several doctors. The ALJ first considered the findings made in May 2019 by Baron Crespo, Psy. D., that Steubing's mental impairment was not severe as "not persuasive because the evidence available at the hearing level supports a finding of severe mental impairments, particularly in light of the standard set forth in SSR 85-28." (Tr. at 19.) The ALJ next considered SAMC Cherry's August 2019 findings that Steubing's mental impairment is severe and that Steubing retains the ability to perform simple work that is not in contact with the general public. (Tr. at 19.) Regarding SAMC Cherry's findings, the ALJ stated the following:

> The reconsideration opinion is particularly persuasive as to the limitation to simple work. However, the opinion that the claimant should have no contact with the public is not supported by the claimant's hearing testimony (he stated his social issues arise primarily with supervisors) or evidence showing cooperative behavior with treatment providers (Exhibits 1F-6F). The evidence also indicated some issues with anger in the context of his family relationships but again no issues with the public. The evidence as a whole supports he can handle up to occasional interaction with the public.

(Tr. at19.) The ALJ further stated:

> Overall, these [social] episodes appear to be isolated and often associated with anger issues from his interpersonal relationships with family. In testimony, the clamant(sic) confirmed that he generally has no issues dealing with the public, but he tends to have conflict with supervisors. I find that based on the evidence, including hearing testimony, the claimant is limited to occasional interaction with the public, coworkers, and supervisors.

(Tr. at 19 (emphasis added) (citations omitted).)

9

Next in determining Steubing's disability, the ALJ considered the opinion of Dr. Dayton. The ALJ noted that Dr. Dayton's opinion was "provided for purposes of the claimant's VA evaluation (Exhibit 1F)." (Tr. 20.) The ALJ noted that Dr. Dayton opined the following:

> [Steubing's] PTSD symptoms of hypervigilance, irritability, reduced frustration tolerance, poor impulse control, verbal and physical outbursts, distractibility, and reduced concentration will severely impair him in a work environment that requires frequent interactions with customers, coworkers or supervisors; decrease his productivity in any work environment, but particularly an office- or teaching- environment where there's an expectation of a certain amount of tolerance and decorum, with limited opportunity to get out, get away, or "let off steam"; cause excessive absenteeism, tardiness and need to leave work early; and make it difficult to function in a work environment that requires a lot of mental processing (such as a fast-paced, complex, or frequently changing work environment).

(Tr. at 20 (citing Ex. 1F/12).) The ALJ, in turn, found Dr. Datyon's opinion unpersuasive for the following reasons:

> [Dr. Dayton's opinion] relies heavily on the claimant's subjective statements, which are not entirely supported by the treating record, nor are they consistent with the mental status examinations, which are generally unremarkable. Although the claimant's legal and behavior problems were considered, the fact remains that the claimant remained employed for many years earning well over SGA following his PTSD diagnosis in 2002, often with little to no mental health treatment. Additionally, there is no evidence of any particular acute event that caused him to no longer be able to work around the time of the alleged onset date, other than malaria, which did not last for more than 12 months.

(Tr. at 20.)

Contrary to Steubing's arguments, the ALJ did not err by failing to properly weigh the medical opinions of Dr. Dayton. In making his disability determination, the ALJ did "not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s) . . . [and] did not provide articulation about evidence that is inherently neither valuable nor persuasive in accordance with 20 CFR 404.1520(c)." (Tr. 18-19.) Although Steubing disagrees with the amount of weight given to Dr. Dayton's opinions, the record contains substantial evidence that supports the ALJ's decision. (Pl.'s Br. a 5; Tr. at 20.) As

noted by the ALJ, Dr. Dayton's opinions were not consistent with the evidence as a whole. (Tr. at 20.) Because the ALJ has discretion to increase or decrease the weight given to the opinion of the treating physician for good cause, including medical opinions that are brief, conclusory, or unsupported by the evidence, the ALJ did not err in failing to place any weight on Dr. Dayton's opinions.

Also contrary to Steubing's argument, the ALJ did not err in weighing SAMC Cherry's opinions. The ALJ opined that SAMC Cherry's specific opinion that Steubing retained the ability to perform simple work that is not in contact with the general public is not persuasive based on other evidence in the record, as set forth above.

Based on the foregoing, the Court finds that the ALJ properly considered the evidence as a whole, utilizing not only parts of the opinions in the record, but also the other medical evidence in the record, including Steubing's hearing testimony and his extensive North Texas VA records to determine Steubing's RFC. The ALJ, in formulating Steubing's RFC, analyzed, *inter alia*, Steubing's own statements, Steubing's adult function report, Steubing's North Texas VA records from 2016-2020, the state agency mental health consultants (Dr. Crespo and SAMC Cherry)'s findings at both the initial and reconsideration level, a written letter from Steubing's former employer, and the August 2018 psychology examination performed by Dr. Dayton. (Tr. 16-20.)

The ALJ discussed the evidence in the record in making his RFC determination, adequately explained the reasoning for such determination and for giving less weight to certain evidence and exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *See, e.g., Muse*, 925 F.2d at 790. The ALJ properly weighed Drs. Crespo, Dayton and SAMC Cherry's opinions against the other evidence and the record *as a whole*. The "ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Moore v. Saul*, No.

11

3:20-cv-48-DPJ-MTP, 2021 WL 909618, at *6 (N.D. Tex. Feb. 1, 2021). Because there is substantial evidence in the record that supports the ALJ's RFC determination and the ALJ properly considered Dr. Dayton and SAMC Cherry's opinions in determining Steubing's RFC, remand is not required.

### B. Duty to Develop the Record at Step Three

In his brief, Steubing also argues that the ALJ failed to "fully and fairly develop the record in determining whether the Plaintiff met a listed impairment when determining the RFC." (Pl.'s Br. at 9.) Steubing asserts that at the initial and reconsideration stages, the SAMCs based their findings on a single medical report, a psychological consultive exam performed by Christopher Bellah, Ph. D. ("Dr. Bellah"), in April 2019. (*Id.*) After Steubing's claim was denied on reconsideration, Steubing submitted Dr. Dayton's August 2019 VA psychological compensation and pension report ("August 2019 VA psychological report") to the SSA. (*Id.* at 9-10.) The ALJ, noting the submission of new evidence, stated: "Prior to the hearing on June 25, 2020, the Plaintiff's representative submitted the Plaintiff's treating medical records from the VA from January 6, 3026 through April 28, 2020." (*Id.* at 10 (citing Tr. 280-418, 420-530, 532-613, 615-93.).) Steubing contends that only five pages of the medical section (the April 2019 psychological consultative examination) were reviewed by a medical doctor. (*Id.* at 10.) As such, Steubing states the ALJ did not fully develop the record and that the ALJ should have had a medical expert review the additional medical records provided to assist him in determining whether Steubing met an impairment in the Listing. (*Id.*)

To develop the record, Steubing maintains that the ALJ should have obtained a medical source statement that describes the types of work the applicant is still capable of performing. (Pl.'s Br. at 11.) In support, Steubing states the following:

> HALLEX provides guidance as to when a medical expert is not discretionary and states that the ALJ must obtain medical expert opinion, either in testimony at the hearing or in response to written interrogatories when the ALJ is considering whether the claimant meets or equals a listed impairment.

(Pl.'s Br. at 11, citing HALLEX § 1-2-5-34(A)(1)(2016)(emphasis omitted).)

In finding that Steubing does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments, the ALJ examined Dr. Dayton's August 2018 psychological report, Dr. Bellah's April 2019 psychological exam, Steubing's adult function report, and Steubing's North Texas VA medical records from 2016-2020. (Tr. 15; *see also* Tr. 258-71; 273-78; 184-92; 280-613.) The ALJ also considered the hearing testimony in conjunction with the reports and medical records. (Tr. at 15.) In issuing his findings, the ALJ confirmed he gave "careful consideration of the entire record." (Tr. at 13.)

In performing his analysis at Step Three, the ALJ found that "[t]he severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, and 12.15." (Tr. 14.) The ALJ relied on Steubing's adult function report, Dr. Dayton's August 2018 psychological exam, Bellah's April 2019 psychological exam, North Texas VA records, and hearing testimony in finding that Steubieng has "moderate limitations" in "understanding, remembering, or applying information." (Tr. at 14-15.) The ALJ, again, relied on Dr. Dayton's August 2018 psychological exam in determining that, "[i]n interacting with others, the claimant has moderate limitations." (Tr. at 15.) The ALJ then, relying on hearing testimony and Steubing's adult function report, found that Steubing has "mild limitations" in the functional area addressing his "ability to concentrate, persist or maintain pace." (Tr. at 15.) Finally, the ALJ found that Steubing has "mild limitations in his ability to adapt or manage himself." (Tr. at 15.) In making this determination the ALJ, again, relied on hearing testimony and Steubing's adult function report. (Tr. at 15.)

To obtain a disability determination at Step Three, a claimant must show that his impairments meet or equal one of the impairments in the Listing. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d). As a threshold matter, the ALJ is responsible for ultimately deciding the legal question whether a listing is met or equaled. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *3 (S.S.A. July 2, 1996). Whether a claimant's impairment meets the requirements of a listed impairment is usually more a question of medical fact than opinion because most of the requirements are objective and simply a matter of documentation, but it is still an issue ultimately reserved to the Commissioner. SSR 96-5p, 1996 WL 374183, at *3 (S.S.A. July 2, 1996). When determining whether an impairment medically equals a listing, the Commissioner considers all relevant evidence[7] in the record about such impairment, including findings from medical sources. 20 C.F.R. § 404.1526(c). Medical equivalence is found when an impairment "is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926.

The claimant has the burden of proving that his impairment or combination of impairments meets or equals a listing. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). "For a claimant to show that his impairment matches [or meets] a listing, it must meet *all* of the specified medical criteria." *Zebley*, 493 U.S. at 530 (emphasis in original). An impairment, no matter how severe, does not qualify if that impairment exhibits only some of the specified criteria. *Id.* The court will find that substantial evidence supports the ALJ's finding at Step Three if the plaintiff fails to demonstrate the specified medical criteria. *Selders*, 914 F.2d at 619-20.

---

[7] Relevant evidence does not include the claimant's vocational factors of age, education, and work experience. 20 C.F.R. § 416.926(c).

However, the ALJ has a duty to fully develop the facts relative to a claim for benefits. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). When the ALJ fails in this duty, he does not have before him sufficient facts on which to make an informed decision and his decision is not supported by substantial evidence. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996); *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). Regarding medical source statements, "[u]sually, the ALJ should request a medical source statement describing the types of work that the applicant is still capable of performing," though "the absence of such a statement, however, does not, in itself, make the record incomplete." *Ripley*, 67 F. 3d at 557. Where no medical statement has been provided, the court focuses upon "whether the decision of the ALJ is supported by substantial evidence in the existing record." *Id.*

In *Anderson v. Sullivan*, the Fifth Circuit held that "[p]rocedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected . . . The major public policy underling the harmless error rule is to preserve judgments and to avoid waste of time." 887 F.2d 630, 634 (5th Cir. 1989) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1363 (5th Cir. 1988)) (per curiam).) "[P]rocedural improprieties . . . will therefore constitute a basis for remand only if such improprieties would case into doubt the existence of substantial evidence to support the ALJ's decision." *Payne v. Colvin*, No. 3:15-CV-2557-BH, 2016 WL 5661647, at *8 (N.D. Tex. Sept. 28, 2016) (quoting *Alexander v. Astrue*, 412 Fed. App'x. 719, 722 (5th Cir. 2011) (emphasis added)); *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988)). To that extent, "[t]he ALJ's error is harmless if the substantial rights of any party have not been affected. *Payne*, 2016 WL 5661647, at *8 (citing *Alexander*, 412 Fed. App'x. at 722).

While Steubing argues the ALJ erred at Step Three by neglecting his duty to fully develop the record by failing to obtain a medical source statement regarding Steubing's extensive VA

records, this Court finds any such error was harmless because, even in the absence of a medical source statement, the ALJ had sufficient facts before him on which to make an informed decision *and* his decision was supported by substantial evidence. As stated, *supra*, the ALJ considered facts from Dr. Dayton's August 2018 psychological exam, Dr. Bellah's April 2019 psychological examination, Steubing's adult function report, Steubing's North Texas VA records from 2016-200, and testimony from the hearing in making his determination. (Tr. 15.) The ALJ's statements regarding Steubing's limitations were supported by the record. As such, the ALJ's ordering a medical source statement to review Steubing's VA records was not necessary and did not render the record incomplete. Accordingly, the Court finds the ALJ did not err in failing to fully develop the record at Step Three.[8]

## RECOMMENDATION

It is recommended that the Commissioner's decision be **AFFIRMED**.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest

---

[8] Based on this finding, the Court declines to address the portion of Steubing's argument that relies on the HALLEX factors. (Pl.'s Br. at 11-12.)

injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

### ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **August 2, 2022,** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED July 20, 2022.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/adh